911 F.2d 736
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Derrick POTTS, Petitioner-Appellee,
v.
James CHRANS, Warden and the Attorney General of Illinois,
Respondents-Appellants.
 No. 89-1021.
 United States Court of Appeals, Seventh Circuit.
 Argued June 8, 1989.
Decided Aug. 27, 1990.
 
 Before CUDAHY, FLAUM and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A state prisoner who was convicted of voluntary manslaughter in an Illinois court filed a petition for a federal writ of habeas corpus. The district court granted the writ. It found that the proceeding before the state trial judge, which the Illinois courts treated as a stipulated bench trial, was actually a guilty plea proceeding. Having made that determination, the district judge found that the plea was not knowing and voluntary because the state trial court failed to ensure that the defendant knew all of the elements of the crime to which he pleaded. We remand for further factfinding and, if necessary, an evidentiary hearing.
 
 I.
 
 2
 The facts in this case are extensive and are set forth at length in the district court's memorandum opinion.[1] We will only summarize them here.
 
 
 3
 Derrick Potts was involved in a shooting incident in Chicago in February of 1983. A man died from "multiple gunshot wounds"--a total of five--which he received in the incident. The wounds were caused by at least two bullets fired from a .38 caliber pistol and at least one bullet from a .38 caliber semi-automatic weapon. Potts admitted he took a .38 caliber pistol away from another man and fired three shots at the victim and hit him at least once. At least one of the .38 caliber bullets removed from the victim came from the weapon Potts fired. The state indicted Potts and two others on multiple charges, including murder. On July 23, 1983, a pretrial conference was held wherein Potts, the state, and the state trial judge reached an arrangement on how the matter was to be submitted for adjudication.
 
 
 4
 The trial judge informed Potts that evidence would be provided to the court by stipulation and if he (the judge) found it warranted a conviction of voluntary manslaughter, then Potts would be convicted of that offense and given a sentence of twelve years. If the judge felt the evidence warranted a conviction for murder, he would declare a mistrial and send the case to another judge. Based on an analysis of the evidence presented in the pretrial conference, the judge preliminarily determined that voluntary manslaughter was appropriate. The judge stated he would again make an independent judgment of the evidence presented in open court.
 
 
 5
 A colloquy between the judge and Potts ensued. Potts stated he understood the arrangement. The judge then asked Potts whether he understood that the best result he could get was to be found guilty of manslaughter. Potts answered in the affirmative. The judge proceeded to question Potts regarding whether he understood the charges against him, the rights he was giving up by agreeing to this arrangement, and the voluntariness of his assent. Included was the following dialogue:
 
 
 6
 THE COURT: You understand you are giving up the presumption of innocence because what you're asking me to do in effect is to presume you guilty of voluntary manslaughter.
 
 
 7
 Do you understand you're giving up the presumption of innocence?
 
 
 8
 DEFENDANT POTTS: Yes, I do.
 
 
 9
 .............................................................
 
 
 10
 ...................
 
 
 11
 * * *
 
 
 12
 THE COURT: You understand that at a trial the state has to prove you're guilty beyond a reasonable doubt.
 
 
 13
 THE COURT: And you are giving up an aspect of that protection by this agreement.
 
 
 14
 You understand that?
 
 
 15
 DEFENDANT POTTS: Yes, I do.
 
 
 16
 Potts responded that he understood each of these aspects of the arrangement and that he entered into it voluntarily. The state called one witness to testify and submitted stipulations containing facts to which its other witnesses would have testified if called. Potts's counsel did not present evidence and waived closing argument. The judge did not ask Potts if he understood each element of the offense of voluntary manslaughter. There is no indication in the record as to what Potts's counsel discussed with him concerning the elements of voluntary manslaughter.
 
 
 17
 The trial judge ruled that Potts was "clearly" proven guilty of a homicide and that he would find Potts guilty of voluntary manslaughter. As for sentencing, the parties rested on the information disclosed during pretrial conference. Potts was sentenced to the custody of the Illinois Department of Corrections for twelve years.
 
 
 18
 Within thirty days, Potts filed a motion to withdraw his guilty plea. In the motion, he essentially challenged the factual basis to support his plea by alleging there were fingerprints on the "murder weapon" which were not his. Potts also questioned the assistance of his counsel. The trial judge stated that the proceeding was not a guilty plea but was a stipulated bench trial. Accordingly, the court treated the motion as one for a new trial and denied the motion.
 
 
 19
 Potts appealed to the Illinois Appellate Court arguing that the evidence was insufficient to support the conviction because there was no proof of causation and that his trial counsel was ineffective because he did not contest the cause of death. The state responded that the evidence was sufficient because it easily supported the verdict under a theory of accountability.[2] The appellate court, in an unpublished opinion, stated that the failure to charge accountability at trial did not preclude the state from raising it on appeal. The appellate court treated the proceeding as a stipulated bench trial and ruled there was sufficient evidence to support the conviction. Because of this ruling, the appellate court summarily found counsel was not ineffective. The Illinois Supreme Court refused further review.
 
 
 20
 Potts then filed a petition in federal court seeking a writ of habeas corpus under 28 U.S.C. Sec. 2254 (1982) and making virtually the same arguments he made in the state appellate court. The district judge found that the pretrial arrangement and subsequent colloquy constituted a submission of a guilty plea. The district judge reasoned:
 
 
 21
 [Potts] did not explicitly plead guilty to voluntary manslaughter, but he stipulated to a bench trial in which, at best, the court would find him guilty of this crime. [Potts] thus waived not only the right to contest the facts, but also the right to challenge the inferences to be drawn from those facts, the application of the facts to the relevant law, and the right to a finding of guilt beyond a reasonable doubt.
 
 
 22
 As a guilty plea, the procedures used by the state trial judge in accepting the plea were found to be deficient. The district judge held that because the state judge made no effort to ascertain whether Potts understood the nature of the voluntary manslaughter charge, the plea was neither intelligently made nor voluntary.[3] The district judge also found that Potts received ineffective assistance from his trial counsel.
 
 II.
 
 23
 Each court which has examined the arrangement and the dialogue between Potts and the state trial judge has indicated that the proceeding had characteristics of both a guilty plea and a stipulated bench trial. The Illinois state courts considered the proceeding to be a bench trial. The federal district court determined it was a guilty plea. We agree with the district court that the proceeding and arrangement constituted a guilty plea. The state trial judge made the required finding that there was a sufficient factual basis for the plea when he found a conviction for voluntary manslaughter was "appropriate." Ill.Ann.Stat. ch. 110A, p 402(c) (Smith-Hurd 1989). After this determination was made, the judge made it clear that the best Potts could do was to be convicted of voluntary manslaughter. He did not receive the presumption of innocence, the right to be found guilty beyond a reasonable doubt, the right to challenge the inferences drawn from the facts, nor the right to challenge the application of the facts to the law. These characteristics suggest the proceeding was a guilty plea and not a bench trial. Therefore, we agree with the finding of the district court that Potts entered a plea of guilty to voluntary manslaughter.
 
 
 24
 Because the proceeding at issue was a guilty plea, Potts was entitled to constitutionally adequate protections. Boykin v. Alabama, 395 U.S. 238, 242 (1969). Under Henderson v. Morgan, 426 U.S. 637, 651 (1976), Potts was entitled to be advised of the elements of the offense to which he pleaded guilty. The district court found that the state trial court "made no effort [ ] to determine whether defendant [Potts] understood the nature of the voluntary manslaughter charge...." 700 F.Supp. at 1514. The court concluded that Potts had not effectively admitted guilt.
 
 
 25
 The State makes two objections to this conclusion. First, it argues that this issue is waived because Potts never alleged it in the state courts. A claim which is not fairly presented to the state courts is waived unless the petitioner can show cause for and prejudice from his procedural default. Sotelo v. Indiana State Prison, 850 F.2d 1244, 1252 (7th Cir.1988). A petitioner "has 'fairly presented' a claim to a state court if he has clearly informed the state court of the factual basis of that claim and has argued to the state court that those facts constituted a violation of the petitioner's constitutional rights." Vernell v. Young, 839 F.2d 1245, 1248 (7th Cir.1988) (citations omitted).
 
 
 26
 Here, Potts's motion to withdraw his plea included an affidavit which alleged as the reasons to grant him leave to withdraw his guilty plea the following:
 
 
 27
 The reason why I would like to withdraw my guilty plea is on account of my attorney saying that if I were to take this to trial and convicted, I would be sentenced to a much more severe sentence of imprisonment. I feel this is patently unfair to plead guilty to a charge I am not guilty of. This court must take special note that there were fingerprints on the murder weapon and that the analysis of those fingerprints indicated that they were not my fingerprints on the weapon.
 
 
 28
 Potts argues that his affidavit adequately presented a claim to the district court that he did not plead knowingly and intelligently guilty. On appeal, Potts's counsel did not argue about the trial court's failure to advise Potts of the elements of the offense, but rather claimed ineffective assistance of the trial counsel based on trial counsel's failure to contest the issue of causation. Potts maintains that the state argued that the proceeding was a guilty plea on appeal, and thus the issue was adequately presented to the state courts.
 
 
 29
 While Potts presents a colorable claim that the issue was presented to the trial court through his affidavit, we cannot agree that the claim was fairly presented to the state appellate court, and thus the issue is waived. The "petitioner must establish that the state court was 'fairly alerted' to the constitutional claim that the 'substance' of the ... claim [was] 'fairly presented.' " Varnell, 839 F.2d at 1247 (citing Wallace v. Duckworth, 778 F.2d 1215, 1223 (7th Cir.1985). Pott's claim that the court was alerted to his argument through the state's brief cannot meet this standard. Indeed, the state appellate court failed to recognize in its written opinion that this claim was even an issue. Moreover, even if the state had adequately raised the issue that the proceeding was a guilty plea, Potts did not argue that the requirements of Boykin were not satisfied.
 
 
 30
 Pott's claim, therefore, must be based on a showing of cause and prejudice. See Wainwright v. Sykes, 433 U.S. 72 (1977); Murray v. Carrier, 477 U.S. 478 (1986). We believe that Potts has shown cause. "[T]he existence of cause ... must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. The factor external to the defense here is the mischaracterization of the proceeding by both state courts. Since the proceeding was labelled a stipulated bench trial initially and treated as such throughout by the attorneys and state judges, there is a real problem in penalizing the defendant for failing to comprehend that it was, in fact, a change of plea hearing.
 
 
 31
 Prejudice, however, is more difficult. If Potts was not advised of the elements of voluntary manslaughter by his attorney or the court, then Potts would not have effectively admitted guilt, which would be a sufficient showing of prejudice. Writing for a four-justice plurality in Henderson, Justice White stated that "[t]he constitutional rule relevant to this case is that the defendant's guilt is not deemed established by entry of a guilty plea, unless he either admits that he committed the crime charged, or enters his plea knowing what the elements of the crime charged are." 426 U.S. at 651 (White, J. concurring). Justice White further explained that this constitutional rule derived from the principle that a guilty plea "provide[s] a trustworthy basis for believing that the defendant is in fact guilty." Id. at 651-52.
 
 
 32
 The district court concluded that Potts "did not know all of the elements of the crime to which he pleaded ..." and therefore was denied due process. The court made this finding based on the transcript of the court proceedings without the benefit of an evidentiary hearing. The Supreme Court, however, has explained that we cannot assume that because the court did not inform a defendant of the elements of the crime that the defendant was unaware of the elements. "[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." Henderson, 426 U.S. at 647. The district court presumed the opposite. Perhaps because the court found counsel's performance inadequate, it felt that such a presumption was justified. We believe, however, that without a showing that he was not informed by counsel of the essential elements of the crime to which he pleaded, Potts cannot establish prejudice. We therefore remand the case for further factfinding and, if necessary, an evidentiary hearing on whether Potts's counsel informed him of the elements of the offense to which he pleaded.
 
 
 33
 Potts also claims ineffective assistance of counsel. In the setting of a guilty plea, the usual standard for evaluating the assistance of counsel were set forth in Hill v. Lockhart, 474 U.S. 52 (1985). In that case, a defendant challenged his guilty plea, claiming that his trial counsel had been ineffective in underestimating the portion of the sentence the defendant would have to serve before becoming eligible for parole. The Supreme Court extended the Strickland test to guilty plea hearings, holding that the prejudice prong could be satisfied only by a showing that but for counsel's deficiencies, the defendant would have insisted on going to trial.
 
 
 34
 We do not believe that Potts would have pleaded differently had competent counsel represented him. Potts was charged with murder and there was substantial evidence that Potts was guilty, including his own admission that he fired three shots at the victim and hit him at least once. At least one of the bullets removed from the victim came from the weapon fired by Potts. While Potts raises a significant issue of causation, we cannot conclude that Potts has presented evidence which demonstrates a reasonable probability that the outcome would have been different.
 
 
 35
 Nevertheless, we believe that Potts may be able to show ineffective assistance of counsel. If counsel failed to inform Potts of the elements of a crime and failed to have the district court so inform him, we believe that counsel may have been ineffective. Potts's counsel potentially allowed him to plead guilty to a crime where he did not know the essential elements and indeed, where he may not have even known that he was pleading guilty.
 
 
 36
 Lockhart is inapplicable to this situation for several reasons. Advice as to parole eligibility, the issue in Lockhart, is not a constitutional prerequisite to the entry of a valid guilty plea. See Key v. United States, 806 F.2d 133, 137 & n. 4 (7th Cir.1986). The Court in Lockhart also agreed with this circuit's holding in Evans v. Meyer, 742 F.2d 371 (7th Cir.1984), that where a defendant alleges that counsel was deficient in failing to advise him or her of an available affirmative defense, the defendant must establish that the defense likely would have succeeded at trial. Lockhart, 474 U.S. at 59. Here, by contrast, we confront a situation in which the defendant may not have known the essential elements of the offense to which he pleaded guilty and, indeed, may not even have realized that he was pleading guilty.
 
 
 37
 We remand the case for further factfinding on whether Potts was informed by counsel of the essential elements of the voluntary manslaughter. This finding should determine both the Boykin claim and possibly the ineffective assistance claim.
 
 
 38
 VACATED AND REMANDED.
 
 
 
 [1]
 United States ex rel. Potts v. Chrans, 700 F.Supp. 1505 (N.D.Ill.1988)
 
 
 [2]
 The relevant portion of the Illinois accountability statute provides:
 Sec. 5-1. Accountability for Conduct of Another. A person is responsible for conduct which is an element of an offense if the conduct is either that of the person himself, or that of another and he is legally accountable for such conduct as provided in Section 5-2, or both.
 Sec. 5-2. When Accountability Exists. A person is legally accountable for the conduct of another when:
 * * *
 (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense.
 Ill.Ann.Stat., ch. 38, paragraphs 5-1, 5-2 (Smith-Hurd 1983).
 
 
 [3]
 The district judge proceeded to find that the writ should be granted even if the state proceeding was a stipulated bench trial because there was insufficient evidence to support a conviction